UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **23-20454-CR-BLOOM/TORRES**

**15 U.S.C. § 78dd-2**
**18 U.S.C. § 371**
**18 U.S.C. § 1956(h)**
**18 U.S.C. § 1956(a)(1)(B)(i)**
**18 U.S.C. § 1956(a)(2)(A)**
**18 U.S.C. § 981(a)(1)(C)**
**18 U.S.C. § 982(a)(1)**



FILED BY____*MP*____D.C.

*Nov 28, 2023*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES OF AMERICA

v.

**CARL ALAN ZAGLIN,**
**ALDO NESTOR MARCHENA, and**
**FRANCISCO ROBERTO COSENZA CENTENO,**

**Defendants.**

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### Relevant Statutory Background

1.      The Foreign Corrupt Practices Act of 1977, as amended, Title 15, United States Code, Sections 78dd-1, *et seq*. (the "FCPA"), was enacted by Congress for the purpose of, among other things, making it unlawful for certain classes of persons and entities to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value to a foreign government official for the purpose of influencing the foreign official, inducing the foreign official to take or omit certain acts, and securing an improper advantage in order to assist those

classes of persons and entities in obtaining or retaining business for, or directing business to, any person.

**Relevant Individuals and Entities**

2.      "Georgia Company 1," an entity whose identity is known to the Grand Jury, was a limited liability company headquartered in Marietta, Georgia.  Georgia Company 1 owned and operated a factory in Honduras that manufactured law enforcement uniforms and accessories. Georgia Company 1 was a "domestic concern" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(B).

3.      **CARL ALAN ZAGLIN** was a citizen of the United States and a majority owner and Chief Executive Officer of Georgia Company 1.  **CARL ALAN ZAGLIN** was a "domestic concern," an "officer," "director," "employee," and "agent" of a "domestic concern," and a "stockholder" acting on behalf of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a) and 78dd-2(h)(1).

4.      "Executive 1," an individual whose identity is known to the Grand Jury, was a citizen of the United States and minority owner and senior executive of Georgia Company 1. Executive 1 was a "domestic concern," an "officer," "director," "employee," and "agent" of a "domestic concern," and a "stockholder" acting on behalf of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a) and 78dd-2(h)(1).

5.      Luis Berkman was a dual citizen of the United States and Bolivia and the Vice President of International Sales at Georgia Company 1.  Luis Berkman was the father of Bryan Berkman and related by marriage to **ALDO NESTOR MARCHENA**.  Luis Berkman was a "domestic concern" and an "employee" and "agent" of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a) and 78dd-2(h)(1).

6.      Comité Técnico del Fideicomiso para la Administración del Fondo de Protección y Seguridad Poblacional ("TASA") was a Honduran governmental agency responsible for, among other things, procuring uniforms and other goods for the Honduran National Police.  TASA was controlled by the government of Honduras, performed a function that the government of Honduras treated as its own, and was a "department, agency, and instrumentality" of the Honduran government as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

7.      **FRANCISCO ROBERTO COSENZA CENTENO** was a citizen of Honduras and the Executive Director at TASA.  **FRANCISCO ROBERTO COSENZA CENTENO** was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).  **FRANCISCO ROBERTO COSENZA CENTENO** controlled multiple companies and bank accounts in Central America and the United States that were used to receive and conceal bribe payments.

8.      "Offshore Front Company 1," an entity whose identity is known to the Grand Jury, was a front company controlled by **FRANCISCO ROBERTO COSENZA CENTENO**. Offshore Front Company 1 was incorporated in Belize in or around 2016 with an address in Belize City, Belize.  **FRANCISCO ROBERTO COSENZA CENTENO** used bank accounts in the name of Offshore Front Company 1 to receive bribe payments from **ALDO NESTOR MARCHENA**, including an account at Belize Bank 1 ending in 2941 ("Offshore Front Company 1 Account 2941").

9.      "U.S. Front Company 1," an entity whose identity is known to the Grand Jury, was a second front company controlled by **FRANCISCO ROBERTO COSENZA CENTENO**.  U.S. Front Company 1 was incorporated in Florida in or around February 2017 with an address in Boca

Raton, Florida, in the Southern District of Florida. **FRANCISCO ROBERTO COSENZA CENTENO** used a bank account in the name of U.S. Front Company 1 at U.S. Bank 1, the identity of which is known to the Grand Jury, ending in 3264 ("U.S. Front Company 1 Account 3264") to receive bribe payments from **ALDO NESTOR MARCHENA**. U.S. Front Company 1 Bank Account 3264 was opened in or around March 2017 with the assistance of **ALDO NESTOR MARCHENA**.

10.     "Foreign Official 1," an individual whose identity is known to the Grand Jury, was a citizen of Honduras and a senior official at TASA who oversaw the work of **FRANCISCO ROBERTO COSENZA CENTENO**. Foreign Official 1 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

11.     "Offshore Front Company 2," an entity whose identity is known to the Grand Jury, was a front company incorporated in Belize in or around 2015 with an address in Belize City, Belize. Foreign Official 1 used a bank account in the name of Offshore Front Company 2 at Belize Bank 1 ending in 1951 ("Offshore Front Company 2 Account 1951") to receive bribe payments from **ALDO NESTOR MARCHENA**.

12.     **ALDO NESTOR MARCHENA** was a dual citizen of the United States and Peru and a resident of Palm Beach County in the Southern District of Florida. **ALDO NESTOR MARCHENA** controlled a series of entities with listed addresses in the Southern District of Florida, including "Florida Company 1," a limited liability company incorporated in Florida with an address in Boca Raton, Florida, the identity of which is known to the Grand Jury; "Florida Company 2," a limited liability company incorporated in Florida with an address in Boca Raton, Florida, the identity of which is known to the Grand Jury; "Florida Company 3," a limited liability company incorporated in Florida with an address in Miami, Florida, the identity of which is known

4

to the Grand Jury; "Florida Company 4," a limited liability company incorporated in Wyoming with an address in Boca Raton, Florida, the identity of which is known to the Grand Jury; and "Florida Company 5," a corporation incorporated in Florida with an address in Boca Raton, Florida, the identity of which is known to the Grand Jury. Florida Companies 1 through 5 were each a "domestic concern," as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(B). **ALDO NESTOR MARCHENA** was a "domestic concern" and a "director," "employee," and "agent" of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a) and 78dd-2(h)(1).

13.   **ALDO NESTOR MARCHENA** controlled numerous bank accounts to include the following, all of which were opened and located in the Southern District of Florida:

a.   An account in the name of Florida Company 1 ending in 6447 at U.S. Bank 2, the identity of which is known to the Grand Jury ("Florida Company 1 Account 6447");

b.   An account in the name of Florida Company 1 ending in 7803 at U.S. Bank 1, the identity of which is known to the Grand Jury ("Florida Company 1 Account 7803");

c.   An account in the name of Florida Company 2 ending in 7915 at U.S. Bank 1 ("Florida Company 2 Account 7915");

d.   An account in the name of Florida Company 3 ending in 7793 at U.S. Bank 1 ("Florida Company 3 Account 7793");

e.   An account in the name of Florida Company 4 ending in 9360 at U.S. Bank 1; and

f.  An account in the name of Florida Company 5 ending in 2228 at U.S. Bank

3.

14.     "New York Company 1," an entity whose identity is known to the Grand Jury, was incorporated in the State of New York with headquarters in Pennsylvania.  New York Company 1 was a manufacturer of military and police equipment, including tear gas containers.  New York Company 1 was a "domestic concern" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(B).

15.     "Florida Company 6," an entity whose identity is known to the Grand Jury, was a limited liability company headquartered in the Southern District of Florida.  Florida Company 6 was a "domestic concern" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(B).

16.     Florida Company 6 controlled a bank account in Florida Company 6's name at U.S. Bank 3 ending in 0506 ("Florida Company 6 Account 0506").

17.     Bryan Berkman was a dual citizen of the United States and Bolivia and a resident of Broward County in the Southern District of Florida.  Bryan Berkman was the son of Luis Berkman and related by marriage to **ALDO NESTOR MARCHENA**.  Bryan Berkman, at different periods during the duration of the scheme, was an employee and agent of Georgia Company 1, New York Company 1, and Florida Company 6.  Bryan Berkman was a "domestic concern," and an "employee" and "agent" of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a) and 78dd-2(h)(1).

<u>COUNT 1</u>
**Conspiracy to Violate the Foreign Corrupt Practices Act**
**(18 U.S.C. § 371)**

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      Beginning in or around March 2015, and continuing through in or around November 2019, in Miami-Dade and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**CARL ALAN ZAGLIN and**
**ALDO NESTOR MARCHENA,**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with each other and with Executive 1, Luis Berkman, Bryan Berkman, and others known and unknown to the Grand Jury, to commit an offense against the United States, that is: being a domestic concern, and an officer, director, employee, and agent of a domestic concern, and a stockholder acting on behalf of a domestic concern, willfully and corruptly to make use of the mails and means and instrumentalities of interstate commerce in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value, to a foreign official or to a person, while knowing that all or part of such money or thing of value would be and had been offered, given, or promised to a foreign official, for purposes of (i) influencing acts or decisions of such foreign official in his or her official capacity; (ii) inducing such foreign official to do or omit to do acts in violation of the lawful duty of such official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect or influence acts or decisions of such government and agencies and instrumentalities, in order to assist **CARL ALAN ZAGLIN**,

**ALDO NESTOR MARCHENA**, Executive 1, Luis Berkman, Bryan Berkman, and others in obtaining and retaining business for and with, and directing business to, Georgia Company 1, New York Company 1, and others, in violation of Title 15, United States Code, Section 78dd-2.

<u>Object and Purpose of the Conspiracy</u>

3.     It was the object and purpose of the conspiracy for **CARL ALAN ZAGLIN**, **ALDO NESTOR MARCHENA**, and their co-conspirators to offer, promise to pay, and pay bribes to Honduran government officials in order to obtain and retain contracts with, and receive payment from, the Honduran government, for and with, and direct business to, Georgia Company 1, New York Company 1, and others.

<u>Manner and Means of the Conspiracy</u>

The manner and means by which **CARL ALAN ZAGLIN**, **ALDO NESTOR MARCHENA**, and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

4.     **CARL ALAN ZAGLIN**, Executive 1, Luis Berkman, Bryan Berkman, and others offered to pay, promised to pay, and authorized the payment of bribes, directly and indirectly, to and for the benefit of Honduran government officials, including **FRANCISCO ROBERTO COSENZA CENTENO** and Foreign Official 1, in order to win contracts with, and secure payment from, TASA.

5.     **CARL ALAN ZAGLIN**, Executive 1, Luis Berkman, Bryan Berkman, and others agreed with **ALDO NESTOR MARCHENA** to have **ALDO NESTOR MARCHENA** pay bribes to **FRANCISCO ROBERTO COSENZA CENTENO**, Foreign Official 1, and others.

6.     **ALDO NESTOR MARCHENA** used U.S. and overseas bank accounts and entities to transfer bribe payments to and for the benefit of **FRANCISCO ROBERTO**

COSENZA CENTENO, Foreign Official 1, and others.  **ALDO NESTOR MARCHENA** received a commission for his assistance in delivering the payments to Honduran government officials.

7.    **CARL ALAN ZAGLIN**, **ALDO NESTOR MARCHENA**, Executive 1, Luis Berkman, Bryan Berkman, and others took steps to conceal both (i) their agreement to pay bribes to **FRANCISCO ROBERTO COSENZA CENTENO**, Foreign Official 1, and others, and (ii) their payments of bribes to **FRANCISCO ROBERTO COSENZA CENTENO**, Foreign Official 1, and others, including by creating sham contracts and fraudulent invoices, and by opening bank accounts in the Southern District of Florida in the name of front companies.

### Overt Acts

In furtherance of the conspiracy, and to accomplish the purpose and objects thereof, **CARL ALAN ZAGLIN**, **ALDO NESTOR MARCHENA**, and their co-conspirators committed and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

*The First Uniform Contract*

1.    On or about April 28, 2015, Bryan Berkman, Executive 1, and others traveled from the United States to Tegucigalpa, Honduras, to meet with representatives of the Honduran National Police regarding Georgia Company 1's bid to sell uniforms and accessories to TASA for the Honduran National Police.

2.    On or about June 25, 2015, Executive 1, on behalf of Georgia Company 1, executed a contract with TASA whereby Georgia Company 1 agreed to provide the Honduran National Police with uniforms and accessories in return for over $4.8 million (the "First Uniform Contract"). Foreign Official 1 signed the First Uniform Contract as a legal representative of TASA.

3.      On or about September 9, 2015, **CARL ALAN ZAGLIN** met with Luis Berkman and **ALDO NESTOR MARCHENA** at Florida Company 1's office in Miami, Florida, in the Southern District of Florida, to discuss making bribe payments to Honduran government officials.

4.      On or about October 6, 2015, **CARL ALAN ZAGLIN**, on behalf of Georgia Company 1, and **ALDO NESTOR MARCHENA**, on behalf of Florida Company 1, executed a sham "Brokerage Agreement" to conceal the bribe payments to Honduran government officials. The Brokerage Agreement required Georgia Company 1 to pay Florida Company 1 25.4 percent of the revenue Georgia Company 1 received from TASA under the First Uniform Contract.

5.      On or about November 9, 2015, Luis Berkman emailed **FRANCISCO ROBERTO COSENZA CENTENO** regarding the status of payment to Georgia Company 1 pursuant to the First Uniform Contract.

6.      On or about January 13, 2016, **CARL ALAN ZAGLIN** emailed **ALDO NESTOR MARCHENA** copies of five invoices totaling $3,108,863.72 from Georgia Company 1 to TASA. In his email, **CARL ALAN ZAGLIN** wrote, "I have attached copies of the invoices that we will be paying commissions on."

7.      On or about January 13, 2016, **ALDO NESTOR MARCHENA** emailed **CARL ALAN ZAGLIN** five invoices from Florida Company 1 to Georgia Company 1 totaling $789,651.38, or 25.4 percent of $3,108,863.72.

8.      On or about January 13, 2016, **CARL ALAN ZAGLIN** caused Georgia Company 1 to wire transfer approximately $393,100.55 to Florida Company 1 Account 6447.

9.      On or about January 14, 2016, **CARL ALAN ZAGLIN** caused Georgia Company 1 to wire transfer approximately $396,550.83 to Florida Company 1 Account 6447.

10.     On or about February 23, 2016, **CARL ALAN ZAGLIN** emailed **ALDO NESTOR MARCHENA**, writing that he wanted "to do a wire transfer to you as follows: . . . 739,110.09 X 00.254 = $187,733.94 Brokerage Fee Due[.]"

11.     On or about February 25, 2016, **ALDO NESTOR MARCHENA** caused his agent to email **CARL ALAN ZAGLIN** an invoice addressed to Georgia Company 1 seeking payment of $187,733.94.  The description on the invoice read "Brokerage Fee Due."  **ALDO NESTOR MARCHENA** was copied on the email.

12.     On or about February 25, 2016, **CARL ALAN ZAGLIN** caused Georgia Company 1 to wire transfer approximately $187,733.94 to Florida Company 1 Account 6447.

13.     On or about March 11, 2016, in response to an invoice he received from Florida Company 1 seeking $282,633.38, **CARL ALAN ZAGLIN** caused Georgia Company 1 to wire transfer approximately $282,633.38 to Florida Company 3 Account 7793.

14.     On or about September 30, 2016, **ALDO NESTOR MARCHENA** caused Florida Company 2 to wire transfer approximately $20,000 from Florida Company 2 Account 7915 in Boca Raton, Florida, to Offshore Front Company 1 Account 2941 controlled by **FRANCISCO ROBERTO COSENZA CENTENO** in Belize City, Belize.

15.     On or about October 1, 2016, Luis Berkman emailed **FRANCISCO ROBERTO COSENZA CENTENO** a screenshot confirming the execution of the $20,000 wire transfer referred to in paragraph 14.

*The Second Uniform Contract*

16.     In or around June 2016, Luis Berkman, on behalf of Georgia Company 1, submitted a bid to TASA to sell additional uniforms and accessories for the Honduran National Police for approximately $5.6 million.

17.     On or about October 26, 2016, Executive 1, on behalf of Georgia Company 1, executed a contract with TASA whereby Georgia Company 1 agreed to provide the Honduran National Police with uniforms and accessories in return for over $5.6 million (the "Second Uniform Contract").   Foreign Official 1 signed the Second Uniform Contract as a legal representative of TASA.

18.     On or about January 6, 2017, **ALDO NESTOR MARCHENA** met with **FRANCISCO ROBERTO COSENZA CENTENO** in Miami, Florida, in the Southern District of Florida, to discuss opening U.S. Front Company 1.

19.     On or about February 3, 2017, Executive 1 emailed **CARL ALAN ZAGLIN** a copy of the Second Uniform Contract and stated in the email, "Signed Oct 26."

20.     On or about February 6, 2017, **CARL ALAN ZAGLIN** and **ALDO NESTOR MARCHENA** executed a second sham "Brokerage Agreement," backdated to October 26, 2016, to conceal subsequent bribe payments to Honduran government officials.

21.     On or about February 9, 2017, **CARL ALAN ZAGLIN** caused Georgia Company 1 to wire transfer approximately $198,090.38 to Florida Company 1 Account 6447.

22.     On or about February 16, 2017, **ALDO NESTOR MARCHENA** caused Florida Company 1 to wire transfer approximately $50,000 from Florida Company 1 Account 7803 to Offshore Front Company 2 Account 1951 controlled by Foreign Official 1.

23.     On or about February 21, 2017, **ALDO NESTOR MARCHENA** caused U.S. Front Company 1 to be incorporated in Boca Raton, Florida, in the Southern District of Florida for the benefit of **FRANCISCO ROBERTO COSENZA CENTENO**.

24.     On or about February 24, 2017, **CARL ALAN ZAGLIN** caused Georgia Company 1 to wire transfer approximately $43,359.17 to Florida Company 1 Account 7803.

25.     On or about March 2, 2017, **ALDO NESTOR MARCHENA** caused U.S. Front Company 1 Account 3264 to be opened at a branch of U.S. Bank 1 in Broward County, Florida, in the Southern District of Florida for the benefit of **FRANCISCO ROBERTO COSENZA CENTENO**.

26.     On or about March 17, 2017, **CARL ALAN ZAGLIN** emailed Luis Berkman regarding an overdue payment from TASA, writing that if the Honduran National Police "transfer does not come in tomorrow, Friday, I am out of options!!"

27.     On or about March 17, 2017, Luis Berkman replied that he "spoke with [Executive 1] yesterday and told him that HNP payment will be send [sic] 3/20 (Monday)[.] [**FRANCISCO ROBERTO COSENZA CENTENO**] will try to talk to his boss to see if he can do something today."

28.     On or about April 3, 2017, **CARL ALAN ZAGLIN** caused Georgia Company 1 to wire transfer approximately $263,264.02 to Florida Company 1 Account 7803.

29.     On or about April 10, 2017, **ALDO NESTOR MARCHENA** caused a wire transfer of approximately $50,000 from Florida Company 1 Account 7803 to Offshore Front Company 2 Account 1951 controlled by Foreign Official 1 in Belize City, Belize.

30.     On or about April 27, 2017, **CARL ALAN ZAGLIN** caused Georgia Company 1 to wire transfer approximately $299,028.19 to Florida Company 1 Account 7803.

31.     On or about April 28, 2017, **CARL ALAN ZAGLIN** emailed Luis Berkman that "Aldo should have received the 299k yesterday afternoon.  Were you able to get the message that the wire had been sent to the people that had the 6:00pm meeting yesterday."

32.     On or about May 12, 2017, **CARL ALAN ZAGLIN** caused Georgia Company 1 to wire transfer approximately $195,221.39 to Florida Company 1 Account 7803.

13

33.     On or about May 18, 2017, **ALDO NESTOR MARCHENA** caused Florida Company 1 to wire transfer approximately $14,000 to Offshore Front Company 2 Account 1951 controlled by Foreign Official 1 in Belize City, Belize.

34.     On or about May 19, 2017, **ALDO NESTOR MARCHENA** caused Florida Company 1 to wire transfer approximately $14,000 to U.S. Front Company 1 Account 3264 controlled by **FRANCISCO ROBERTO COSENZA CENTENO**.

35.     On or about August 30, 2017, **CARL ALAN ZAGLIN** caused Georgia Company 1 to wire transfer approximately $197,149.54 to Florida Company 1 Account 7803.

*The Tear Gas Contract*

36.     On or about October 24, 2016, Bryan Berkman emailed New York Company 1 and asked for a quote for tear gas launchers and ammunition to be submitted to **FRANCISCO ROBERTO COSENZA CENTENO**.

37.     On or about November 9, 2016, Bryan Berkman caused New York Company 1 to submit a quote for tear gas launchers and ammunition worth $481,964.20 to **FRANCISCO ROBERTO COSENZA CENTENO** at his TASA email address.

38.     On or about October 9, 2017, Bryan Berkman sent **FRANCISCO ROBERTO COSENZA CENTENO** a WhatsApp message stating, in Spanish, "Dear [**FRANCISCO ROBERTO COSENZA CENTENO**], I hope all is well.  If you could please try to put some pressure on the bank to make the wire transfer today."

39.     On or about October 9, 2017, **FRANCISCO ROBERTO COSENZA CENTENO** responded, in Spanish, "They are receiving the money today.  I will confirm when BCH [the Central Bank of Honduras] PROCESSES IT."

14

40.     On or about December 11, 2017, Bryan Berkman emailed a representative of New York Company 1: "I know you are working on the 50k for this week.  I just wanted to let you know that our lobbying for that larger immediate contract is now dependent on us fulfilling my lobbyist fees owed from that partial payment."

41.     On or about December 17, 2017, Luis Berkman sent a WhatsApp message to Bryan Berkman, stating: "Tomorrow, you have to deposit at least the first 15 that have already been sent[, they are] tied with this issue . . . Tomorrow as soon as you can talk to [**ALDO NESTOR MARCHENA**] and send him the 15 this has to be ready by 4 pm because I have a conference with them."

42.     On or about December 18, 2017, Bryan Berkman sent a WhatsApp message to **ALDO NESTOR MARCHENA**, stating: "I have an account ending in 6447.  Can I wire the the [*sic*] 15k there?"

43.     On or about December 18, 2017, **ALDO NESTOR MARCHENA** sent a WhatsApp message to Bryan Berkman providing the account details for U.S. Front Company 1 Account 3264 controlled by **FRANCISCO ROBERTO COSENZA CENTENO**.

44.     On or about December 18, 2017, Bryan Berkman replied, in Spanish, "[**ALDO NESTOR MARCHENA**], I cannot send directly to F," in reference to **FRANCISCO ROBERTO COSENZA CENTENO**.

45.     On or about December 18, 2017, in response to Bryan Berkman's message referred to in paragraph 44, **ALDO NESTOR MARCHENA** sent a WhatsApp message to Bryan Berkman providing the account details for Florida Company 1 Account 7803 and stated, in Spanish, "send here."

46.     On or about December 18, 2017, Bryan Berkman wire transferred approximately $15,025 from Florida Company 6 Account 0506 to Florida Company 1 Account 7803.

47.     On or about December 22, 2017, Bryan Berkman wire transferred approximately $18,763 from Florida Company 6 Account 0506 to Florida Company 1 Account 7803.

48.     On or about December 22, 2017, Bryan Berkman sent to **ALDO NESTOR MARCHENA** via WhatsApp a screenshot of a confirmation of the wire transfer referred to in paragraph 47.  Bryan Berkman added, in Spanish, "for [**FRANCISCO ROBERTO COSENZA CENTENO**]".

49.     On or about December 26, 2017, **ALDO NESTOR MARCHENA** caused a wire transfer in the amount of approximately $18,713 to be sent from Florida Company 1 Account 7803 to U.S. Front Company 1 Account 3264 controlled by **FRANCISCO ROBERTO COSENZA CENTENO**.

### *2019 Bid for Additional Uniform Contract*

50.     In or around late 2019, Georgia Company 1 sought to win another contract with TASA for the sale of uniforms to the Honduran National Police worth approximately $7.5 million.

51.     On or about October 10, 2019, **CARL ALAN ZAGLIN**, Executive 1, and Luis Berkman discussed making bribe payments to **FRANCISCO ROBERTO COSENZA CENTENO** and others on the proposed contract.

52.     That same day, on or about October 10, 2019, Luis Berkman called **FRANCISCO ROBERTO COSENZA CENTENO** to confirm the amount of the bribe to be paid on the proposed contract.

53.     On or about November 6, 2019, Executive 1 emailed Georgia Company 1's bid for the contract to a consultant who was assisting Georgia Company 1 with its contract proposal. **CARL ALAN ZAGLIN** and Luis Berkman were copied on the email.

All in violation of Title 18, United States Code, Section 371.

**COUNT 2**
**Foreign Corrupt Practices Act**
**(15 U.S.C. § 78dd-2)**

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     On or about November 6, 2019, in St. Lucie County, in the Southern District of Florida, and elsewhere, the defendant,

**CARL ALAN ZAGLIN**

being a domestic concern and officer, director, employee and agent of a domestic concern, did willfully make use of, and aid, abet and willfully cause others to make use of, the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay and authorization of the payment of any money, offer, gift, promise to give and authorization of the giving of anything of value to a foreign official, and to a person while knowing that all and a portion of such money and thing of value would be and had been offered, given and promised to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use his influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist **CARL ALAN ZAGLIN**, **ALDO NESTOR MARCHENA**, Executive 1, Luis Berkman, Bryan Berkman, and others in obtaining and retaining business for and with, and

17

directing business to, Georgia Company 1, New York Company 1, and others, as follows: **CARL ALAN ZAGLIN** caused, and aided and abetted, Executive 1 to send an email to a consultant in the Southern District of Florida containing Georgia Company 1's corrupt bid on a contract with TASA.

In violation of Title 15, United States Code, Section 78dd-2, and Title 18, United States Code, Section 2.

**COUNT 3**
**Conspiracy to Commit Money Laundering**
**(18 U.S.C. § 1956(h))**

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around March 2015 and continuing through in or around November 2019, in Miami-Dade and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**CARL ALAN ZAGLIN,**
**ALDO NESTOR MARCHENA, and**
**FRANCISCO ROBERTO COSENZA CENTENO**

did knowingly and voluntarily combine, conspire, confederate, and agree with each other and with Executive 1, Luis Berkman, Bryan Berkman, Foreign Official 1, and others known and unknown to the Grand Jury, to commit offenses defined in Title 18, United States Code, Section 1956, namely:

a.      to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and

the control of the proceeds of one or more specified unlawful activities, in violation of Title 18, United States Code, Section 1956(a)(l)(B)(i); and,

      b.    to knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of one or more specified unlawful activities, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

It is further alleged that the specified unlawful activity is a felony violation of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2; and an offense against a foreign nation, specifically Honduras, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, as provided by Title 18, United States Code, Section 1956(c)(7)(B)(iv).

All in violation of Title 18, United States Code, Section 1956(h).

**COUNT 4**
**Money Laundering**
**(18 U.S.C. § 1956(a)(1)(B)(i))**

1.    The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.    On or about October 2, 2020, in Broward and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ALDO NESTOR MARCHENA and**
**FRANCISCO ROBERTO COSENZA CENTENO,**

did knowingly conduct, aid, abet, and cause others to conduct, and attempt to conduct a financial transaction affecting interstate commerce, that is, the transfer of $20,600 from a bank account ending in 0506 at U.S. Bank 3 to a bank account ending in 2228 at U.S. Bank 3, which financial

19

transaction involved the proceeds of a specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of a specified unlawful activity.

It is further alleged that the specified unlawful activity is a felony violation of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2; and an offense against a foreign nation, specifically Honduras, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, as provided by Title 18, United States Code, Section 1956(c)(7)(B)(iv).

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT 5
## Engaging in Transactions in Criminally Derived Property
### (18 U.S.C. § 1957)

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about October 8, 2020, in Miami-Dade and Palm Beach Counties, in the Southern District of Florida and elsewhere, the defendants,

**ALDO NESTOR MARCHENA and
FRANCISCO ROBERTO COSENZA CENTENO,**

did knowingly engage in, and aid, abet, and cause others to engage in, and attempt to engage in, a monetary transaction affecting interstate commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, that is, a transfer in the amount of approximately $19,940.80 from a bank account ending in 9360 at U.S. Bank 1 to a bank account ending in 0506 at U.S. Bank 3, such property having been derived from a specified unlawful

activity, and knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity.

It is further alleged that the specified unlawful activity is a felony violation of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2; and an offense against a foreign nation, specifically Honduras, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, as provided by Title 18, United States Code, Section 1956(c)(7)(B)(iv).

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **CARL ALAN ZAGLIN**, **ALDO NESTOR MARCHENA**, or **FRANCISCO ROBERT COSENZA CENTENO** have an interest.

2.      Upon conviction of a violation or a conspiracy to commit a violation of the FCPA, Title 15, United States Code, Section 78dd-2, as alleged in this Information, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.      Upon conviction of a violation of Title 18, United States Code, Sections 1956 or 1957, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4.     The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, a forfeiture money judgment that represents the amount of proceeds obtained by defendant from the alleged offense.

5.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

        a. cannot be located upon the exercise of due diligence;

        b. has been transferred or sold to, or deposited with, a third party;

        c. has been placed beyond the jurisdiction of the court;

        d. has been substantially diminished in value; or

        e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and the

procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

ELI S. RUBIN
ASSISTANT UNITED STATES ATTORNEY

PETER L. COOCH
ANTHONY SCARPELLI
TRIAL ATTORNEYS

23

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**UNITED STATES OF AMERICA**

v.

CARL ALAN ZAGLIN et al.,
_____ /
                    Defendants.

**Court Division** (select one)
   ☒ Miami  ☐ Key West  ☐ FTP
   ☐ FTL  ☐ WPB

**CASE NO.:** _____

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of counts _____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) Yes_____
   List language and/or dialect: Spanish_____

4. This case will take ___10___ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I   ☐ 0 to 5 days
   II  ☒ 6 to 10 days
   III ☐ 11 to 20 days
   IV ☐ 21 to 60 days
   V  ☐ 61 days and over

   (Check only one)
   ☐ Petty
   ☐ Minor
   ☐ Misdemeanor
   ☒ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No_____
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) No_____
   If yes, Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No_____
   If yes, Judge _____ Case No. _____

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No_____

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No_____

By: _____

Eli S. Rubin
Assistant United States Attorney
Court ID No.   A5502535

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: **CARL ALAN ZAGLIN**

**Case No**:

Count #: 1

Conspiracy to Violate the Foreign Corrupt Practices Act

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment: Five (5) years**
* **Mandatory Min. Term of Imprisonment (if applicable): No**
* **Max. Supervised Release: Three (3) years**
* **Max. Fine:  $250,000 or twice the amount of the financial gain or loss.**

Count #:2

Violation of the Foreign Corrupt Practices Act

Title 15, United States Code, Section 78dd-2
* **Max. Term of Imprisonment: Five (5) years**
* **Mandatory Min. Term of Imprisonment (if applicable): No**
* **Max. Supervised Release: Three (3) years**
* **Max. Fine: Up to $250,000 or twice the amount of the financial gain or loss.**

Count #: 3

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment: Twenty (20) years**
* **Mandatory Min. Term of Imprisonment (if applicable): No**
* **Max. Supervised Release: Three (3) years**
* **Max. Fine: Up to $500,000 or twice the amount of the criminally derived property involved in the transaction.**

*\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>**ALDO NESTOR MARCHENA**</u>

**Case No**:

Count #: 1

<u>Conspiracy to Violate the Foreign Corrupt Practices Act</u>

<u>Title 18, United States Code, Section 371</u>
* **Max. Term of Imprisonment: Five (5) years**
* **Mandatory Min. Term of Imprisonment (if applicable): No**
* **Max. Supervised Release: Three (3) years**
* **Max. Fine:  $250,000 or twice the amount of the financial gain or loss.**

Count #: 3

<u>Conspiracy to Commit Money Laundering</u>

<u>Title 18, United States Code, Section 1956(h)</u>
* **Max. Term of Imprisonment: Twenty (20) years**
* **Mandatory Min. Term of Imprisonment (if applicable): No**
* **Max. Supervised Release: Three (3) years**
* **Max. Fine: Up to $500,000 or twice the amount of the criminally derived property involved in the transaction.**

Count #: 4

<u>Money Laundering</u>

<u>Title 18, United States Code, Section 1956(a)(1)(B)(i)</u>
* **Max. Term of Imprisonment: Twenty (20) years**
* **Mandatory Min. Term of Imprisonment (if applicable): No**
* **Max. Supervised Release: Three (3) years**
* **Max. Fine: Up to $500,000 or twice the amount of the criminally derived property involved in the transaction.**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: **ALDO NESTOR MARCHENA**

**Case No**:

Count #: 5

Engaging in Transactions in Criminally Derived Property

Title 18, United States Code, Section 1957
**\* Max. Term of Imprisonment: Ten (10) years**
**\* Mandatory Min. Term of Imprisonment (if applicable): No**
**\* Max. Supervised Release: Three (3) years**
**\* Max. Fine: Up to $250,000 or twice the amount of the criminally derived property**
**involved in the transaction.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>**FRANCISCO ROBERTO COSENZA CENTENO**</u>

**Case No**:

Count #: 3

<u>Conspiracy to Commit Money Laundering</u>

<u>Title 18, United States Code, Section 1956(h)</u>
**\* Max. Term of Imprisonment: Twenty (20) years**
**\* Mandatory Min. Term of Imprisonment (if applicable): No**
**\* Max. Supervised Release: Three (3) years**
**\* Max. Fine: Up to $500,000 or twice the amount of the criminally derived property involved in the transaction.**

Count #: 4

<u>Money Laundering</u>

<u>Title 18, United States Code, Section 1956(a)(1)(B)(i)</u>
**\* Max. Term of Imprisonment: Twenty (20) years**
**\* Mandatory Min. Term of Imprisonment (if applicable): No**
**\* Max. Supervised Release: Three (3) years**
**\* Max. Fine: Up to $500,000 or twice the amount of the criminally derived property involved in the transaction.**

Count #: 5

<u>Engaging in Transactions in Criminally Derived Property</u>

<u>Title 18, United States Code, Section 1957</u>
**\* Max. Term of Imprisonment: Ten (10) years**
**\* Mandatory Min. Term of Imprisonment (if applicable): No**
**\* Max. Supervised Release: Three (3) years**
**\* Max. Fine: Up to $250,000 or twice the amount of the criminally derived property involved in the transaction.**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**