UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>23-CR-20454-JB</u>

**UNITED STATES OF AMERICA**

vs.

**CARL ALAN ZAGLIN,**

      **Defendant.**

_____/

<u>**UNITED STATES' TRIAL MEMORANDUM**</u>

The United States respectfully submits this Memorandum in preparation for the trial of Carl Alan Zaglin ("Zaglin" or the "Defendant"), set to begin September 2, 2025. This Memorandum will address: (1) the charges alleged in the Indictment (ECF No. 3); (2) trial length and jury selection, addresses, and instructions; (3) the government's anticipated witnesses; (4) stipulations; (5) pending motions; and (6) other steps the government intends to take to streamline the presentation of voluminous documentary evidence to the jury.

**I.  BACKGROUND**

    **A.  The Scheme**

On November 28, 2023, a grand jury in this District returned a five-count Indictment wherein Zaglin was charged with conspiracy to violate the Foreign Corrupt Practices Act (FCPA), in violation of 18 U.S.C. § 371 (Count 1); a substantive violation of the FCPA, in violation of 15 U.S.C. § 78dd-2 (Count 2); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 3).

Two additional defendants, Aldo Nestor Marchena ("Marchena") and Francisco Roberto

Cosenza Centeno ("Cosenza") were also charged in the Indictment and have pleaded guilty pursuant to cooperation plea agreements.[1] Juan Ramon Molina Rodriguez ("Molina"), a co-conspirator, was charged via Information and pleaded guilty pursuant to a plea agreement. *United States v. Molina Rodriguez*, 24-20297-CR-MD.

The Indictment alleges that the Defendant, the former majority owner and Chief Executive Officer of Atlanco, and his co-conspirators conspired to bribe—and did in fact bribe—Honduran government officials, including Cosenza and Molina, to obtain, and ensure payment on, over $10 million in contracts with the Comité Técnico del Fideicomiso para la Administración del Fondo de Protección y Seguridad Poblacional (TASA), a Honduran governmental agency that procured goods and services for the Honduran National Police and other government agencies. The Indictment describes two contracts won by Atlanco: the "First Uniform Contract," executed in June 2015, and the "Second Uniform Contract," executed in October 2016. The Indictment also alleges that the Defendant and others conspired to pay bribes in connection with a third uniform contract in 2019, which was ultimately unsuccessful.[2] The government expects that the evidence at trial will show that the conspiracy began in approximately March 2015 and continued through approximately November 2019.

The Indictment alleges that, in furtherance of the scheme, the Defendant and his co-conspirators laundered over $2 million in funds that were used to pay bribes to Honduran officials, including Cosenza and Molina. The evidence at trial will show that Zaglin orchestrated the scheme

---

[1] Marchena was charged in Counts 1, 3, 4 and 5 and Cosenza was charged in Counts 3, 4, and 5.

[2] Atlanco also won two smaller contracts with TASA in March 2019, and unsuccessfully bid on a contract in 2018.

with his business partner, Brian DeHart (then-President of Atlanco),[3] Luis Berkman (Atlanco's then-Vice President of International Sales), and several others. Beginning in or around early 2015, executives from Atlanco and representatives of a Florida-based distributor of tactical gear and equipment named Tactical Products Group (TPG) sought to win a contract worth approximately $4.8 million to sell uniforms and accessories to the Honduran National Police, which was part of the Honduran Ministry of Security.

The evidence at trial will show that, to create a pool of money for the bribes, and to conceal the scheme, the Defendant and his co-conspirators allocated $750,000 for a so-called "admin" fee. Further, in or about September 2015, the Defendant and his co-conspirators recruited Marchena, who lived and worked in the Southern District of Florida, to launder the bribes and to make payments to Cosenza, Molina, and others on Atlanco's behalf. To conceal the scheme, the Defendant (on behalf of Atlanco) entered into purported "Brokerage Agreements" with Marchena and paid Marchena through invoices that purported to reflect actual work completed by Marchena on behalf of the Defendant and Atlanco.

Under the Brokerage Agreement, corresponding to the First Uniform Contract, the Defendant paid Marchena approximately 25% of Atlanco's contract proceeds, or approximately $1.2 million. Under the second Brokerage Agreement, backdated to correspond to the Second Uniform Contract, the Defendant paid Marchena approximately 21% of Atlanco's contract proceeds, or approximately $1.2 million.

The evidence at trial will show that Marchena did in fact pay bribes to Cosenza and Molina on behalf of the Defendant. Marchena wired bribe payments to bank accounts in Belize and the United States, among other payments. The Defendant and his co-conspirators also paid bribes to

---

[3] DeHart died in late 2023.

Cosenza in cash, and made payments to an individual named Jaime Nativi, knowing that some or all of those payments would be used to pay bribes.

In approximately 2018, the Defendant and Atlanco bid on a third uniform contract, which was ultimately awarded to another manufacturer. However, in 2018 and 2019, the Defendant and Atlanco entered into two additional contracts with TASA. In approximately June 2019, the Defendant wire transferred a portion of the proceeds from the 2019 contracts to International Defense Group, an entity controlled by coconspirator Luis Berkman. Luis Berkman used the proceeds, in part, to pay cash bribes.

Finally, the evidence will show that, in 2019, the Defendant and others agreed to pay bribes to Cosenza and others in connection with the 2019 uniform contracts bid. In furtherance of their corrupt agreement, in or about November 2019, the Defendant aided and abetted and caused DeHart to email a bid for the additional uniform contract to a Florida-based consultant.[4]

### B.      The Charges

For his role in the scheme described above, the Indictment charges the Defendant with three felony counts:

<u>Count One</u> charges the Defendant with conspiring with Marchena and others to violate the FCPA.[5]

<u>Count Two</u> of the Indictment charges Zaglin with a substantive violation of the FCPA, based on a November 2019 email sent to the Southern District of Florida containing Atlanco's corrupt bid for the third uniform contract.

---

[4] The email is the unit of prosecution for Count 2 of the Indictment.

[5] On August 8, 2025, at the Defendant's request, the government provided defense counsel with a list of 11 individuals that the government maintains were co-conspirators.

4

Count Three of the Indictment charges Zaglin with conspiring with Marchena, Cosenza, and others to engage in domestic concealment money laundering and international promotional money laundering, coinciding with the same time period as the FCPA conspiracy. The specified unlawful activities alleged in Count Three include: (i) violations of the FCPA and (ii) violations of Honduran law.

The specific Honduran laws at issue in the money laundering conspiracy are the crimes of "passive" and "active" corruption under Articles 361 through 366 of the Honduran Penal Code. The elements of the crimes of passive and active corruption are summarized in the parties' joint proposed jury instructions, which were provided to the Court via email on August 22, 2025, and will be further described in the declarations of Professor Keith S. Rosenn.[6]

### C.  Status of Co-Defendants Aldo Marchena and Francisco Cosenza

On June 5, 2025, Marchena pleaded guilty to a Superseding Information charging him with conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(h) and 1957(a), pursuant to a plea agreement with the United States. *See* ECF Nos. 137, 140. He is scheduled to be sentenced on October 28, 2025.

On August 13, 2025, Cosenza pleaded guilty to Count 5 of the Indictment, *i.e.*, engaging in transactions in criminally derived property in violation of 18 U.S.C. § 1957, pursuant to a plea agreement with the United States. *See* ECF Nos. 165, 179. He is scheduled to be sentenced on October 31, 2025.

---

[6] Both parties' proposed jury instructions on the elements of Honduran law for Count 3 rely on Professor Rosenn's June 13, 2025 declaration. The parties largely agree on the elements of the relevant foreign laws, but disagree on whether additional instructions are necessary to explain the elements to the jury. The government is working with Professor Rosenn on a brief supplemental declaration addressing these issues, which the government will provide to the Court (along with his June 13, 2025 declaration), prior to the hearing on August 28, 2025,

Accordingly, trial will proceed against Zaglin only, on Counts One, Two, and Three of the Indictment. As discussed below, Cosenza and Marchena are expected to testify at trial.[7]

## II. TRIAL LENGTH AND JURY ADDRESSES

While the length of trial will depend, in large part, on the length of cross-examinations and arguments raised by the defense, the government estimates using approximately nine trial days to present its case-in-chief. The government will continue to work on streamlining its case leading up to (and throughout) trial. The government has identified 17 potential witnesses. One government witness, Professor Keith Rosenn, an expert on Honduran and Latin American law, is not expected to testify before the jury, since his testimony, if necessary, will be limited to advising the Court on Honduran law for the purpose of instructing the jury on Count 3.

The defense has identified 10 potential witnesses and has not indicated whether the Defendant intends to testify. The defense estimates that its case will take approximately 1-2 trial days.

The government requests opening statements of 20 minutes per party. The government does not intend to show the jury any anticipated exhibits or demonstratives during its opening statement, and requests that the defense provide the government advance notice of any exhibits or demonstratives it intends to show during its opening statement. As discussed below, the government has a pending motion *in limine* regarding the Defendant's ability to reference communications with or the presence of attorneys in its opening statement. ECF No. 162.

The parties have agreed on a proposed verdict form, which was attached to the joint proposed jury instructions provided to the Court on August 22, 2025.

---

[7] Cosenza is experiencing health issues that may impact his ability to testify at trial. At this time, the government continues to expect to call him at trial.

### III.     ANTICIPATED WITNESSES

On August 4, 2025, pursuant to the Court's June 9, 2025 Joint Scheduling Order, *see* ECF No. 142, the government provided its anticipated witness list to defense counsel. On August 23, 2025, the government filed its witness and exhibit lists with the Court. *See* ECF No. 185, 187,

Set forth below are high-level summaries of the anticipated testimony of each of the government's 17 potential witnesses, should these witnesses testify. These summaries are not intended to cover all the facts to which each witness is expected to testify, and the order of witnesses presented below is not necessarily intended to reflect the order in which each witness will testify.

*Atlanco Witnesses*

Luis Berkman is the former vice president of international sales at Atlanco. In 2021, he pleaded guilty to conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(h) and 1957(a), for bribing the Bolivian Minister of Government and others in connection with a 2020 contract for tear gas. *See* Plea Agreement (ECF No. 72), *United States v. Luis Berkman*, 21-CR-60258-PCH (S.D. Fla. Sept. 28, 2021). His factual proffer did not specifically cover the Honduran bribery scheme at issue in this case.

Luis Berkman is expected to testify about his and the Defendant's involvement in the Honduran bribery scheme and his knowledge of actions by members of the conspiracy and others in furtherance of the scheme, including Honduran officials' receipt of bribe payments. Luis Berkman will also testify regarding his involvement, along with the Defendant, in paying purported broker fees to Marchena, knowing that a portion of those fees would be used to pay bribes in connection with the scheme. The government anticipates that it may seek to introduce a number of photos, emails, business records, and other electronic communications through Luis

Berkman. Many of these communications will be offered into evidence as statements of the Defendant or co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2).

Luis Berkman will also testify regarding certain audio recordings involving conversations between himself, the Defendant, and others. As discussed below, to assist the jury in hearing and understanding the audio recordings, the government will display subtitles that are synced to the audio and to whomever is speaking. The subtitles are based on transcriptions of the recordings, which have been produced to the defense. The audio recordings, marked as Government Exhibits 40, 41, and 42, are the subject of a motion *in limine*. *See* ECF No. 160.

Because Luis Berkman was involved in certain communications with Atlanco's outside attorneys, the government expects that he will be cross-examined regarding the involvement or presence of attorneys in connection with the retention of Marchena. As discussed below, the government has filed a motion *in limine* concerning the scope of such cross examination. *See* ECF No. 162. Among other things, the government has requested that the Defendant provide notice of any documents that the defense may seek to introduce through Luis Berkman, or use in his cross-examination, to the extent that such documents relate to or involve communications with Atlanco's attorneys.

Finally, based on the government's review of the Defendant's witness and exhibit lists, the government anticipates that the defense intends to seek to introduce evidence related to Luis Berkman's tax returns, and perhaps his actual tax returns. While the government believes that limited cross-examination on this subject may be appropriate, the government will likely object to extended questioning on this topic, to the introduction of his tax returns, and to testimony from any defense witnesses whose only testimony will relate to his tax returns.

<u>Scott Haygood</u> is the former CFO of Atlanco and is expected to testify, among other things,

that he raised concerns to the Defendant and others about the purported "broker" payments to Marchena. The government anticipates that it may seek to introduce a number of photos, emails and business records, including but not limited to invoices and payment records, through Haygood. To promote efficiency at trial, the government may seek to introduce invoices and payment records through composite exhibits consisting of multiple records, rather than as individual exhibits.

Haygood was also involved in a number of communications with Atlanco's outside attorneys and, therefore, the scope of his examination may also be impacted by the Court's resolution of the government's motion *in limine*.

***TPG Witnesses***

Bryan Berkman is Luis Berkman's son and a former employee of Atlanco and Tactical Products Group or "TPG." Bryan Berkman was prosecuted along with his father in connection with the Bolivian tear gas contract. Bryan Berkman pleaded guilty to conspiracy to violate the FCPA. His factual proffer did not specifically cover the Honduran bribery scheme. Plea Agreement (ECF No. 72), *United States v. Bryan Samuel Berkman*, 21-CR-60255-PCH (S.D. Fla. Sept. 28, 2021).

Bryan Berkman is expected to testify that he had direct involvement in the bribery scheme, both when he worked for TPG and later when he worked for Atlanco. Bryan Berkman will also testify regarding Atlanco's use of Marchena. The government anticipates that it may seek to introduce a number of photos, emails, business records, and other electronic communications through Bryan Berkman. Many of these communications will be offered into evidence as statements of the Defendant or co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2).

Loren Simpson is a former executive at TPG and is expected to testify that he participated

9

in the conspiracy from approximately March 2015 until approximately October 2015, when he left TPG. In addition, Simpson will testify regarding Atlanco's retention of Marchena. Simpson will also testify regarding emails between and among other members of the conspiracy, including the Defendant. The government anticipates that it may seek to introduce a number of photos, emails, business records, and other electronic communications through Simpson. Many of these communications will be offered into evidence as statements of the Defendant or co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2).

As discussed below, the Defendant has moved to limit the scope of Simpson's testimony. *See* ECF No. 173. The government has opposed the motion. *See* ECF No. 186.

***Achieve Witness***

Aldo Nestor Marchena is a dual United States and Peruvian citizen who ran a sophisticated money laundering operation in South Florida. Marchena was previously convicted of wire fraud unrelated to the Honduran bribery and money laundering scheme alleged in the Indictment and fled the United States before beginning his term of imprisonment. *See United States v. Aldo Marchena*, 19-CR-20622-UU (S.D. Fla.). He was extradited from Colombia to the United States and pleaded guilty to conspiracy to commit money laundering in connection with this case. He is currently incarcerated. The government is in communication with the United States Marshals Service to arrange for his appearance at trial.

Marchena is expected to testify that he served as an intermediary, using various companies to launder bribe payments on behalf of the Defendant, Atlanco, and other members of the conspiracy. The government anticipates that it may seek to introduce a number of photos, bank records, emails, business records, and other electronic communications through Marchena. Many of these communications will be offered into evidence as statements of the Defendant or co-

10

conspirator statements pursuant to Federal Rule of Evidence 801(d)(2).

Finally, as with Marchena, the government anticipates that the defense intends to seek to introduce evidence related to Marchena's tax returns, and perhaps his actual tax returns. The government anticipates that the parties will disagree as to the relevance and general admissibility of this evidence.

*TASA Witnesses*

Gabriela Salgado is a Honduran citizen who previously worked at TASA (and later at the United States Embassy in Tegucigalpa, Honduras). Gabriela Salgado is expected to testify regarding the purpose and creation of TASA, how it functioned, and TASA's status an instrumentality of the Honduran government, and its employees' and officers' status as agents of an instrumentality, based on her personal knowledge and experience.[8] The defense has moved *in limine* to preclude Salgado from testifying regarding "rumors" of bribery at TASA. ECF No. 173. The government has advised the defense and the Court that it does not intend to elicit such testimony from Salgado. ECF No. 186.

Francisco Roberto Cosenza Centeno is a Honduran citizen and former Executive Director of TASA. He was extradited from Honduras in or about April 2024. As noted above, he pleaded guilty to engaging in transactions in criminally derived property in connection with a transaction related to a bribe paid by Bryan Berkman after the charged conspiracy ended. Although the transaction underlying the charge to which Cosenza pled guilty concerned a transaction in October 2020, Cosenza's factual proffer also addresses the charged scheme in significant detail. *See* ECF No. 166. Francisco Cosenza is currently awaiting sentencing. He is expected to testify that, as an

---

[8] Salgado's testimony will help establish facts relevant to certain elements under the FCPA, including that TASA was an "instrumentality" of the Honduran government and that TASA's employees and officers were "foreign officials," as that term is used in the FCPA.

Executive Director of TASA, he accepted bribes from the Defendant and Atlanco in exchange for helping the Defendant, Atlanco and other members of the conspiracy obtain and retain business with TASA. Cosenza will testify that he received bribes through several companies.

The government anticipates that it may seek to introduce a number of photos, bank records, emails, business records, and other electronic communications through Cosenza. Many of these communications (some of which have been translated from Spanish to English) will be offered into evidence as statements of the Defendant or co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2).

Cosenza is expected to testify in Spanish. The government has arranged for certified Spanish language interpreters to assist during his testimony.

Juan Ramon Molina Rodriguez is a Honduran citizen and former Titular Director of TASA. He pleaded guilty in the Southern District of Florida to conspiracy to commit money laundering in connection with the Honduran bribery scheme. *See* Plea Agreement (ECF No. 42), *United States v. Molina Rodriguez*, 24-20297-CR-MD (S.D. Fla. Sept. 10, 2024).

Molina is expected to testify that, as a member of TASA's governing committee, he accepted bribes from the Defendant and Atlanco in exchange for helping the Defendant, Atlanco and other members of the conspiracy obtain and retain business with TASA. Molina signed the 2015 First Uniform Contract and the 2016 Second Uniform Contract on behalf of TASA. Molina will testify that he received the bribes through a company called Sky Max Leasing.

The government anticipates that it may seek to introduce a number of photos, bank records, emails, business records, and other electronic communications through Molina. Many of these communications (some of which have been translated from Spanish to English) will be offered into evidence as statements of the Defendant or co-conspirator statements pursuant to Federal Rule

of Evidence 801(d)(2).

*United States Government Employee Witnesses*

Ruben Fernandez is a retired Special Agent of the U.S Department of Homeland Security, Homeland Security Investigations ("HSI"). The government expects to call Fernandez to testify that the government recovered a memory card (the "SD Card") during the court-authorized search of Luis Berkman's home in May 2021, which testimony the government will offer as evidence to authenticate the audio recordings discussed above. Aside from executing that search warrant, Agent Fernandez had no substantive involvement in the government's investigation.

Brian Hixson is a Technical Enforcement Officer with HSI. The government expects to call Hixson to testify about the forensic capture from the SD Card of the audio recordings discussed above. Hixson will further testify that metadata on the recordings indicates they were made on or about October 10, 2019. Aside from imaging certain devices, Hixson was not substantively involved in the government's investigation.

David Keyes is a Task Force Officer with HSI. Keyes is expected to testify regarding evidence obtained by the government, potentially to include grand jury subpoenas, voluntary productions, 18 U.S.C. § 2703(d) orders, email search warrants, and travel records. Keyes may also testify regarding certain records obtained by the government pursuant to Mutual Legal Assistance Treaty requests issued to foreign governments.

The government may also introduce certain electronic communications obtained during the investigation through Keyes. The government also intends to introduce several summaries of voluminous records through Keyes. Such summaries will be offered into evidence pursuant to Rule 1006 and Rule 611(a) of the Federal Rules of Evidence.

Finally, the government anticipates that Keyes will read into evidence email

13

communications that are not introduced through another witnesses. Most of those communications were authored by Zaglin, DeHart, or other co-conspirators identified in the government's August 8, 2025 notice to defense counsel regarding co-conspirators, and will be offered into evidence pursuant to Federal Rule of Evidence 801(d)(2). Additionally and independently, several emails written to Zaglin may be admissible as probative of his intent and knowledge, irrespective of the truth of any statement therein.

Mackenzie Maschke is a Digital Investigative Analyst with the U.S. Department of Justice's Computer Crime and Intellectual Property Section ("CCIPS"). If necessary to establish authenticity, Maschke is expected to testify regarding her forensic review of the Defendant's cellular telephone, which the government searched pursuant to a warrant. The government may introduce a limited number of electronic communications and photos obtained from the Defendant's phone through Maschke. Aside from processing electronic data, Maschke was not substantively involved in the government's investigation.

Kevin Russell is an HSI Special Agent who forensically captured Cosenza's cellular telephone pursuant to a voluntary search. If necessary, the government may call Special Agent Russell to authenticate messages from the phone. Aside from imaging devices, Russell was not substantively involved in the government's investigation.

*Financial Analysis Witness*

Michael Petron is a Certified Public Accountant at Stout Risius Ross, LLC. Petron has reviewed and summarized voluminous bank records obtained by the government and will testify regarding his "flow of funds" and tracing analysis in connection with the records he reviewed in connection with this case. The government intends to introduce several summaries of voluminous records through Petron. Such summaries will be offered into evidence pursuant to

Rule 1006 and Rule 611(a) of the Federal Rules of Evidence.[9] The parties have entered into a stipulation governing the authenticity and admissibility of the bank records at issue in this case.

*Expert Witness*

Keith Rosenn is an expert in Honduran criminal law. On February 7, 2025, the government provided the defense with the required expert disclosures under Federal Rule of Criminal Procedure 16(a)(1)(G).  ECF No. 108.  On June 17, 2025, the government supplemented its disclosure with a sworn declaration from Rosenn describing the elements of "active" and "passive" corruption under Articles 361 through 366 of the Honduran Penal Code, and the meaning of public official under Honduran law.  The government will provide the Court with this declaration and an anticipated supplemental declaration before the motions hearing on August 28, 2025.

As noted above, because Rosenn's testimony is only necessary to inform the Court on the elements of Honduran law for the purpose of instructing the jury, the government respectfully requests that, if the Court wishes to hear testimony from Rosenn, that he be permitted to testify outside the presence of the jury.  The defense has not challenged Rosenn's qualifications as an expert and has not identified a Honduran law expert of its own.

*Records Custodian Witness*

Donna Williams is a records custodian for American Airlines and will testify regarding certain travel records produced by American Airlines.  Williams will describe the processes used by American Airlines to create and maintain the records provided to the government, and that it was also those company's regular practice to keep and maintain such records in the ordinary course of its business.  Williams will also describe the meaning of certain entries in such records.  The

---

[9] The government does not intend to admit all of the underlying bank records into evidence. Rather, the government will introduce only certain "sub-exhibits" reflecting specific payments identified in Petron's summary exhibits.

government will seek to introduce the travel records through Williams pursuant to Federal Rule of Evidence 803(6).

## IV. OTHER EVIDENTIARY MATTERS

### A. Stipulations

As noted above, the government has provided the defense with draft stipulations related to the authenticity and admissibility of various government exhibits. The parties have entered into stipulations regarding the authenticity and admissibility of various records produced to the government by Atlanco, Google, Yahoo, and various banks. Defense counsel has indicated that it may take the position that certain email communications involving employees of Atlanco may constitute business records of Atlanco, but has not yet identified any email communications that the defense maintains are admissible pursuant to Federal Rule of Evidence 803(6). In general, and with very limited exceptions, the government expects to take the position that email communications are not admissible as business records, although they may be admissible for other reasons.

The parties have also reached a stipulation regarding translations of certain foreign language documents.

The government will continue to negotiate additional stipulations with the defense in good faith with the aim of narrowing the evidentiary and factual issues in dispute at trial.

### B. Translations

As noted above, the government expects to introduce several exhibits that were originally written in Spanish. The parties have reached a stipulation regarding the accuracy of the government's translations. With limited exceptions, the government will move only the English-language version of any exhibits into trial. The only exceptions will be documents containing an

original signature, which does not appear on the translated version.

Although several government witnesses are native Spanish speakers, all but one of the government's witness are expected to testify in English. The government has arranged to have certified Spanish translators to assist during the testimony of Cosenza.

### C. Demonstratives

The government may use the following demonstrative exhibits: (a) a display board containing the photos, names, and employers of various individuals involved in the conspiracy; and (b) subtitled audio files. In addition, the government may print and enlarge several exhibits that will also be shown in digital form, including several of the summary charts described below.

Regarding the transcribed audio files, the government intends to play .mp4 digital files that will display the relevant speaker in real time and will have subtitles that will be synced to the audio recordings. The government respectfully requests permission to provide the jury with paper copies of the transcriptions to read along with the recordings. The government intends to offer the underlying audio files into evidence but not seek to admit the subtitled .mp4 files.

### D. Rule 1006 Summaries

The government intends to introduce several Rule 1006 exhibits to summarize voluminous records for the jury, some of which are described below. In addition, the government is evaluating additional ways to streamline its presentation of evidence at trial, including through the introduction of additional Rule 1006 summaries.

#### 1. Michael Petron

Michael Petron has prepared nine summary charts summarizing voluminous bank records from 13 different bank accounts from five different banks and three different countries, which in total would comprise thousands of pages of records. The government intends to offer these

summaries pursuant to Rule 611(a) and/or Rule 1006. Assuming the summaries are admitted, the government does not intend to move for the admission of thousands of pages of bank records received from domestic and foreign banks. Rather, the government intends to offer only approximately 10-15 "sub exhibits" (*i.e.*, exhibits comprising a few pages extracted from a larger set of bank records) as examples of the financial flows identified in the summaries.

### 2. David Keyes

David Keyes has prepared three summary charts summarizing voluminous transactional records and invoices related to Atlanco, TASA, and Achieve. The government intends to offer these summaries into evidence pursuant to Rule 611(a) and/or Rule 1006.

### E. Exhibits

With only a few exceptions, the government intends to show exhibits to witnesses and to the jury in electronic format. The government has provided defense counsel with a complete set of its exhibits to date and will continue to supplement its exhibits and exhibit list up to and through trial. The government has also prepared a set of hard copy exhibits for the Court, in addition to a digital copy on a USB drive.

The government will work with the defense to provide an agreed upon set of admitted exhibits for the jury, in both digital and paper form.

## V. PENDING MOTIONS

At the time of this filing, the pending motions include:

(1) the Defendant's motion to dismiss (ECF No. 145), which includes the government's response to the motion (ECF No. 146), and the Defendant's reply in support of the motion (ECF No. 149);

(2) the government's first motion *in limine* (ECF No. 159, 160), which includes

>Defendant's responses to the motion (ECF No. 176, 181), and the government's reply in support of the motion (forthcoming);
>
>(3) the government's second motion *in limine* (ECF No. 162), which includes Defendant's response to the motion (ECF No. 177), and the government's reply in support of the motion (forthcoming); and
>
>(4) the Defendant's motion *in limine* (ECF No. 173), and the government's response (ECF No. 186).

The Court has scheduled a hearing on the pending motions for August 28, 2025. ECF No. 182. As noted above, the government's second motion *in limine* addresses the government's request that the Court require the Defendant to provide the Court and the government with additional details regarding his anticipated advice-of-counsel defense (*e.g.*, what advice was given, by whom, and when, and what information was supplied to the attorneys giving the advice), if he wishes to address this issue in his opening statement, among other relief. The Court's resolution of this motion, and any information proffered by the Defendant, may impact a number of other trial issues as well, including the scheduling of witnesses and what evidence the government may seek to introduce through those witnesses.

The parties have also provided the Court with proposed *voir dire* questions (ECF nos. 163, 170) and jury instructions (by email on August 22, 2025).

| | |
|---|---|
| LORINDA I. LARYEA<br>ACTING CHIEF, FRAUD SECTION<br>CRIMINAL DIVISION<br>U.S. DEPARTMENT OF JUSTICE | JASON A. REDING QUIÑONES<br>UNITED STATES ATTORNEY<br>SOUTHERN DISTRICT OF FLORIDA |
| BY: /s/_____<br>Peter L. Cooch<br>Clayton Solomon<br>Trial Attorneys<br>1400 New York Avenue, NW<br>Washington, DC 20005<br>(202) 924-6259<br>Email: Peter.Cooch@usdoj.gov<br>Email: Clayton.Solomon@usdoj.gov | BY: /s/_____<br>Eli S. Rubin<br>Assistant United States Attorney<br>Court ID No. A5503535<br>99 N.E. 4th Street<br>Miami, Florida 33132<br>(305) 961-9247<br>Email: Eli.Rubin@usdoj.gov |