UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>23-20454-CR-BECERRA</u>

**UNITED STATES OF AMERICA**

vs.

**CARL ALAN ZAGLIN,
ALDO NESTOR MARCHENA,
FRANCISCO ROBERTO COSENZA CENTENO,**

                  **Defendants.**
_____/

## DEFENDANT ZAGLIN'S SENTENCING MEMORANDUM AND INCORPORATED MOTION FOR DOWNWARD VARIANCE IN SENTENCE

A 15 year employee of Defendant Carl Zaglin and Atlanco, LLC, describes Mr. Zaglin as "a man who has consistently acted with honesty, humility, and compassion toward others." *See* Letter from Christian Noll, October 31, 2025. This is the man who now respectfully moves this honorable Court to vary downward from the advisory and recommended sentencing range pursuant to the United States Sentencing Guidelines and impose a sentence of 31 months imprisonment on him—the average prison sentence imposed on individuals for violation of the Foreign Corrupt Practices Act, 15 U.S.C. §§ 78dd-1 *et seq*. (FCPA). *See* https://fcpa.stanford.edu/statistics-keys.html. Mr. Zaglin respectfully shows that he is a 70 year-old man with significant health problems, who led a life of generosity and compassion towards others for all of those years prior to his being charged in this case. As shown by the letters submitted in support of Mr. Zaglin, his generosity and compassion has extended for decades not only to family and friends, but to the large number of surrogate family members whom Mr. Zaglin employed and supported through the business which he ran for decades and which employed hundreds of people in the U.S. and abroad. As President Abraham Lincoln observed long ago, "[m]ercy bears richer fruits than strict justice."

1

Osborn H. Oldroyd, THE LINCOLN MEMORIAL: ALBUM–IMMORTELLES, p. 459 (Gem Publ'g House 1882). Mr. Zaglin accordingly implores the Court's mercy and requests that it impose a sentence on him of 31 months' imprisonment or, regardless, a sentence less than the advisory sentencing range which is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

## I. <ins>INTRODUCTION</ins>

Mr. Zaglin is the former Chief Executive Officer of Atlanco, LLC, a U.S. company founded in 1950 which manufactured uniforms and accessories for militaries and law enforcement agencies in the U.S. and internationally. In 2023, the Government charged Mr. Zaglin in this action with conspiring to violate the FCPA in relation to two contracts which Atlanco had entered into with the government of the Republic of Honduras over seven years earlier to provide uniforms and accessories to the Honduran National Police, as well as for a prospective contract in 2019. *See* Dkt. # 1, pp. 9, 12.

Mr. Zaglin was charged along with Aldo Nestor Marchena, the individual who made payments to Honduran officials, and Francisco Roberto Cosenza Centeno, one of the Honduran officials who received payments, however both Marchena and Cosenza pled guilty prior to Mr. Zaglin's trial. Other central actors in the scheme referenced in the Indictment, Atlanco's own Vice President of International Sales Luis Berkman, and his son, Bryan Berkman, were never charged as a result of the scheme. A vital witness repeatedly referenced in the Government's Indictment and a party to many of the events alleged in the Indictment, former President of Atlanco Bryan DeHart, passed away from illness less than a month prior to the return of the Indictment against Mr. Zaglin. Atlanco performed its obligations under the two Honduran contracts. No U.S. individual or entity, including the Government, was harmed by any actions of Mr. Zaglin.

Mr. Zaglin recognizes that he was the only defendant not to change his plea to guilty and to exercise his right to trial by jury pursuant to the Sixth Amendment of the United States Constitution. He now comes before the Court as a convicted man, respectfully imploring the Court's mercy, asking the Court to consider all of his circumstances and all of the sentencing purposes in section 3553(a) in determining a reasonable and sufficient sentence for him. The Presentence Investigation Report (Report) prepared for Mr. Zaglin recommends a sentence of 151 to 188 months' imprisonment. *See* Dkt. # 277, ¶ 115. Mr. Zaglin does not doubt that the Government will argue for an even greater sentence to be imposed on him. Considering his personal characteristics and circumstances, his character as reflected by the many statements from his colleagues, friends and family, his age and health conditions, and the sentences imposed in similar cases, Mr. Zaglin respectfully requests that the Court impose a sentence of incarceration in his case of 31 months, or otherwise a sentence less than the recommended advisory sentencing range.

## II. ARGUMENT

### A. Standards Governing Sentencing

18 U.S.C. § 3553 provides that a sentencing court shall impose a sentence on a defendant which is "sufficient, but not greater than necessary…" to comply with the purposes set forth in the section. *See* 18 U.S.C. § 3553(a). "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Williams*, 456 F.3d 1353, 1363 (11th Cir. 2006).

A sentencing judge may "sentence[ ] within or outside the Guidelines range in the exercise of his discretionary power under [18 U.S.C.] § 3553(a)…" *United States v. Booker*, 543 U.S. 220, 260 (2005). "District courts are obligated to impose a reasonable sentence, regardless of the

3

Guidelines range, so long as the Guidelines have been considered." *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006). "[A]fter the district court has accurately calculated the Guideline range, it 'may impose a more severe or more lenient sentence'…" *United States v. Winingear*, 422 F.3d 1241, 1244-1245 (11th Cir. 2005) (quoting *United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005); citing *Booker*, at 220). An outside the guidelines sentence does not have to be justified by "extraordinary" circumstances, and is not governed by any "rigid mathematical formula." *See United States v. Irey*, 612 F.3d 1160, 1186 (11th Cir. 2010) (quoting *Gall v. United States,* 552 U.S. 38, 47 (2007)). "Whether the applicable § 3553(a) factors justify a variance is a discretionary call." *United States v. King*, 57 F.4th 1334, 1338 (11th Cir. 2023).

**B. The Nature and Circumstances of Mr. Zaglin's Offense**

Section 3553(a) requires the Court, in determining the sentence to be imposed, to consider the nature and circumstances of the offense. *See* 18 U.S. C. § 3553(a)(1). Mr. Zaglin fully acknowledges that the offenses were serious. Mr. Zaglin, Marchena and others were charged with offering, promising to pay, and paying bribes to Honduran government officials in order to obtain and retain contracts with, and receive payment from, the Honduran government, and to direct business to Atlanco. *See* Dkt. # 1, p. 8. Honduran officials Cosenza and Juan Ramon Molina Rodriguez received approximately $248,000 from the monies paid by Atlanco to Marchena. *Id*. at 11-14.

**C. Mr. Zaglin's Personal History and Characteristics**

The Court heard references during trial to Mr. Zaglin's uncle, Jack Zaglin. Jack Zaglin started Atlanco in 1950 as an Army Navy surplus store. *See* Dkt. # 277, ¶ 106. For over 60 years, it was a thriving, family-owned U.S. company, which was well respected in its field. The business engaged in the distribution of Atlanco's uniform brand, Tru-Spec, nationwide and in up to 20

4

countries around the world, to military personnel, first responders and law enforcement and security personnel. Carl worked at Atlanco since 1978, taking over the business from his uncle. Atlanco employed hundreds of individuals in the Atlanta, Georgia, area, and at its facility in La Ceiba, Honduras. The company ceased operations in 2024—not because Mr. Zaglin wanted it to, but because it had to.

The Court furthermore has letters in support of Mr. Zaglin which demonstrate how genuinely concerned and generous Mr. Zaglin was towards the many people who worked for him—whom he treated like family. Former Atlanco employee Allyn Abshire writes the Court regarding Mr. Zaglin's generosity when Mr. Abshire was forced to care for his sister, who was diagnosed with stage IV colon cancer. *See* Letter from Allyn Abshire. Mr. Zaglin ensured that Mr. Abshire was able to work remotely and support his sister during the years in which she tried to fight her illness. *Id*. Years before, Mr. Zaglin had helped Mr. Abshire and his children to get there first home. *Id*. And Mr. Abshire states how, when his brother was deployed with the United States Air Force, Mr. Zaglin adopted dozens of airmen under his command, providing them with clothing, supplies and care packages during their deployment. *Id*. Mr. Christian Noll, Atlanco's former International Sales Manager, writes concerning how Mr. Zaglin supported him when he immigrated to the U.S. from Germany, including providing him with an apartment and a car when he could not afford them. *See* Letter from Christian Noll, October 31, 2025. Mr. Noll went on to work for Atlanco for 15 years. *Id*. Sean Luther, who worked for Atlanco and Mr. Zaglin for over 30 years writes that "Mr. Zaglin led Atlanco with a family-oriented philosophy that shaped the company's culture. It was common for employees to stay for decades, as I did, because the workplace felt more like a community than a corporation." Letter from Sean Luther.

5

As Mr. Zaglin's former employees are willing to come forward to attest to Mr. Zaglin's kind and giving nature, his former spouse, Teressa Lorrie Zaglin, affirms these qualities in Mr. Zaglin's family and personal life. Mrs. Zaglin had three children of her own when Mr. Zaglin married her in 1989. *See* Letter from Teressa Lorrie Zaglin. Mr. Zaglin treated the children as his own, and remained a father figure to them even after his marriage to Mrs. Zaglin ended. *Id*. Mr. Zaglin's friends, Matt and Claudia Sinclair, describe how Mr. Zaglin came to stay with them and help them after Mrs. Sinclair underwent a medical procedure. *See* Letter from Matt and Claudia Sinclair. Mr. Zaglin's brother-in-law, Louis Roistacher, writes concerning Mr. Zaglin's support for him and Mr. Zaglin's disabled sister. *See* Letter from Louis Roistacher, October 31, 2025. And Rabbi Mark Hillel Kunis of Congregation Shaarei Shamayim in Atlanta states concerning Mr. Zaglin that "There has never been a time when I called upon him for help with our community, whether with programming or charity, when he has not generously stepped up." Letter from Rabbi Mark Hillel Kunis, November 10, 2025.

Mr. Zaglin had a law-abiding life, full of generosity and kindness to his community, his coworkers and his friends and family, prior to the charges in this case. He has been a loving and devoted father, husband and friend. He has been a proud and doting father to a very successful son, and a daughter who is dedicating her career to nursing and helping others. Several of his friends and family were present to support him during his trial, and many more have submitted statements in support of him for his sentencing.

The defendant's history and characteristics are an important factor in sentencing. *See United States v. Howard*, 28 F.4th 180, 218 (11th Cir. 2022) (citing 18 U.S.C. § 3553(a)(1)). "'[A] judge at sentencing considers the whole person before him or her as an individual.'" *Concepcion v. United States,* 597 U.S. 481, 486 (2022) (quoting *Koon v. United States*, 518 U.S. 81, 113

6

(1996)). Considering the evidence submitted regarding Mr. Zaglin's exemplary life and generous and kind nature, the Court should afford Mr. Zaglin mercy in sentencing and should exercise its authority to vary below the advisory sentencing range and impose a sentence of 31 months' imprisonment, the average sentence for a defendant convicted of violating the FCPA.

**D. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Provide Just Punishment for the Offense, to Promote Respect for the Law, to Afford Adequate Deterrence and to Protect the Public**

Section 3553 directs a sentencing court to consider the "need" for a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; … to afford adequate deterrence to criminal conduct; … [and] to protect the public from further crimes of the defendant…" 18 U.S.C. § 3553(a)(2). Mr. Zaglin has admitted that the offense was a serious one. However, a lengthy sentence of incarceration—or any sentence of incarceration—is unnecessary to either account for the seriousness of the offense or to provide just punishment for the offense.

There is also no need to impose a sentence of incarceration on Mr. Zaglin to teach Mr. Zaglin to respect the law or to protect the public, or deter others from similar criminal conduct. The conduct which Mr. Zaglin was convicted of began when Mr. Zaglin was 60 years old. *See* Dkt. # 1; 277, p. 3. Apart from a traffic offense, there is no evidence that Mr. Zaglin otherwise violated the law before the conduct in this case, or that he has violated any law since. Mr. Zaglin is now 70 years old and will be well into his 70s upon the completion of any term of imprisonment imposed upon him. The U.S. Sentencing Guidelines recognize that "[t]he age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age." U.S.S.G. § 5H1.1. Mr. Zaglin no longer has a business and there is little or no risk that he could ever engage in conduct similar to that involved in this case again. The sentencing

7

considerations under Section 3553(a)(2) accordingly do not weigh in favor of the imposition of a lengthy sentence of imprisonment on Mr. Zaglin.

**E. The Need for the Sentence Imposed to Provide Mr. Zaglin With Needed Medical Care**

Section 3553(a)(2), however, also requires a sentencing court to consider the need for any sentence imposed to provide the defendant with needed medical care. *See* 18 U.S.C. § 3553(a)(2)(D). A letter from the Shepard Center in Atlanta shows that Mr. Zaglin suffers from degenerative disease in his cervical spine, peripheral neuropathy (a condition that damages the nerves outside the brain and spinal cord), chronic pain, right carpal tunnel syndrome and bilateral hammertoes. *See* Letter from Michael Smith, October 28, 2025. As a result of these ailments, Mr. Zaglin requires use of a walker to assist with mobility and prevent falls, and has been prescribed a variety of medications for treatment and pain management. *Id*.

Sentencing courts have varied or departed downward from the recommended sentencing range on grounds of issues involving a defendant's health. *See United States v. Seecharan*, 569 F. App'x 781, 782 (11th Cir. 2014) (*per curiam*; unpublished) (the district court, which determined that the sentencing guideline range for the defendant, who suffered from "chronic deformities," mobility problems, and pain, was 108 to 135 months' imprisonment, sentenced the defendant to 60 months); *United States v. Lopez-Herrera*, 481 F. App'x 571, 571–73 (11th Cir. 2012) (*per curiam*; unpublished) (noting that the trial court imposed a sentence of 131 months on the defendant, which represented a downward variance from the applicable Guidelines range of 151 to 188 months, "because of [the defendant's] deteriorating physical condition, and his relative culpability compared to his convicted co-conspirators"); *United States v. Kresler*, 392 F. App'x 765, 776 (11th Cir. 2010) (*per curiam*; unpublished) (observing that the trial court carefully considered the defendant's medical history when imposing a sentence which was four months less

8

than the lower end of the range prescribed by the Guidelines); *United States v. Messick*, 232 F. App'x 933, 933–934 (11th Cir. 2007) (*per curiam*; unpublished) (the district court imposed a sentence of 60 months imprisonment on the defendant, who had a sentence range of 78 to 97 months' imprisonment, where the defendant provided details of his poor health and honorable military background at sentencing). Likewise, courts have relied upon a defendant's age in sentencing defendants below their recommended sentencing ranges. *See United States v. Langston*, 590 F.3d 1226, 1237 (11th Cir. 2009) (district court considered the defendant's age and health in giving the defendant a sentence 43 months below the low end of the Guidelines range); *United States v. Cunningham*, 368 F. App'x 42, 43 (11th Cir. 2010) (*per curiam*; unpublished) (trial court took the defendant's age and health into account in imposing a sentence of 60 months' imprisonment, below the applicable guideline range of 78 to 97 months' imprisonment); see also *See Baron*, 914 F.Supp. at 662 ("The defendant is 76-years old. His life expectancy is 7.39 years. Few cases involve defendants in this age range, and those that do have found it significant") (citing *United States v. Moy,* 1995 WL 311441 (N.D.Ill. 1995)). As another court has found, "[k]eeping infirm elderly people behind bars can cost up to three times more than imprisoning younger offenders." *United States v. Baron*, 914 F.Supp. 660, 663 (D.Mass. 1995) (citing Molly Fairchild James, *The Sentencing of Elderly Criminals*, 29 Am. Crim. L.Rev. 1025, 1040 (1992)).

      Mr. Zaglin is requesting that, in combination with the other considerations raised herein, his age and his health be considered in support of a sentence of imprisonment of 31 months. Mr. Smith is an elderly individual, diminutive and has a number of health problems. Serving any period of incarceration away from his family and medical providers will accordingly present formidable challenges for him. Therefore, considering Mr. Zaglin's age and health, Mr. Zaglin respectfully

requests that he be sentenced to a sentence of imprisonment of 31 months, or in any event a sentence less than the advisory sentencing range.

**F. The Need to Avoid Unwarranted Sentence Disparities**

Section 3553(a) also directs a sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct…" 18 U.S.C. § 3553(a)(6). The purpose of the Sentencing Reform Act which enacted Section 3553 was "'to create a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences.'" *Hughes v. United States*, 584 U.S. 675, 688 (2018) (quoting *Freeman v. United States*, 564 U.S. 522, 533 (2011)).

Stanford Law School, in collaboration with Sullivan & Cromwell LLP, has published key statistics regarding FCPA enforcement actions from 1977 to present in its Foreign Corrupt Practices Act Clearinghouse. *See* https://fcpa.stanford.edu/statistics-keys.html. The publication lists 31 months as the "Average Length of Prison Sentence (Imprisonment or House Arrest)." *Id*. Mr. Zaglin acknowledges that this average likely includes sentences for defendants who have entered guilty pleas. However, Mr. Zaglin respectfully submits that based upon the individual considerations in his case, that a sentence of 31 months imprisonment would be sufficient punishment for him and an appropriate sentence. In considering whether to grant the requested sentence, Mr. Zaglin also respectfully asks the Court to consider the other individuals whom the Government has contended were substantially involved in the conduct charged against Mr. Zaglin and who were never prosecuted and therefore who will never be punished for their involvement. Luis Berkman, the largest beneficiary of the monies paid to Marchena and Achieve GEA, LLC—never charged. Bryan Berkman—never charged. Loren Simpson, President of Tactical Products Group—never charged.

The U.S. Sentencing Commission's Judiciary Sentencing Information (JSIN) furthermore shows that, for fiscal years 2020 through 2024, for defendants whose primary Guideline was U.S.S.G. § 2C1.1 and whose sentencing range was 151 to 188 months' imprisonment, as recommended by Mr. Zaglin's Report, courts varied or departed downward in sentencing 75% of the time. *See* https:// jsin.ussc.gov/ analytics/ saw.dll?Dashboard. Mr. Zaglin respectfully submits that, even if the Court declines to impose the requested sentence of 31 months imprisonment as sufficient punishment for the offense, a sentence less than the advisory sentencing range recommended in this case would constitute reasonable and sufficient punishment for the offense, and would avoid unwarranted sentencing disparities.

### III. <u>CONCLUSION</u>

As another court has recognized:

> But, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, "the history and characteristics of the defendant."

*United States v. Adelson*, 441 F. Supp. 2d 506, 513–514 (S.D.N.Y. 2006). "When a defendant appears for sentencing, the sentencing court considers the defendant on that day, not on the date of his offense or the date of his conviction." *Concepcion,* 597 U.S. at 486 (citing *Pepper v. United States*, 562 U.S. 476, 492 (2011)). Based upon the grounds and authorities set forth herein, Defendant Carl Zaglin respectfully prays that the Court consider all of Defendant's characteristics and circumstances, his character and the life he has led, and that the Court exercise its power to show mercy and sentence Defendant to 31 months' imprisonment or, in the alternative, that the Court impose a sentence less than the recommended advisory sentencing range.

11

Respectfully submitted, this 12th day of November, 2025.

>Robert M. Perez, P.A.
>3162 Commodore Plaza, Suite 3E
>Coconut Grove, Florida 33133
>(305) 598-8889 - Office
>E-mail: rperez@rmplawpa.com
>
>S/Robert M. Perez..................
>ROBERT M. PEREZ
>Florida Bar Number: 477494
>
>*/s/ Craig A. Gillen*
>Craig A. Gillen, Esq.
>*/s/ Anthony C. Lake*
>Anthony C. Lake, Esq.
>GILLEN LAKE & CLARK LLC
>400 Galleria Parkway
>Suite 1920
>Atlanta, Georgia 30339
>Telephone: (404) 842-9700
>Fax: (404) 842-9750
>Email: cgillen@glcfirm.com
>       aclake@glcfirm.com
>
>Counsel for Mr. Carl Zaglin

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically via CM/ECF on this 12th day of November, 2025.

    Robert M. Perez, P.A.
    3162 Commodore Plaza, Suite 3E
    Coconut Grove, Florida 33133
    (305) 598-8889 - Office
    E-mail: rperez@rmplawpa.com

    S/Robert M. Perez..................
    ROBERT M. PEREZ
    Florida Bar Number: 477494

    Counsel for Mr. Carl Zaglin