UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-20454-CR-BECERRA

UNITED STATES OF AMERICA

v.

CARL ALAN ZAGLIN,

       **Defendant.**

_____/

## THE UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

After a two-week trial, a jury found defendant Carl Alan Zaglin ("ZAGLIN"), the majority shareholder and Chief Executive Officer of Atlanco, LLC ("Atlanco"), guilty of conspiring to violate the Foreign Corrupt Practices Act ("FCPA"), violating the FCPA, and conspiring to engage in money laundering. The government's case-in-chief, established through witness testimony, audio recordings, text and email messages, and bank records, proved that ZAGLIN knowingly bribed Honduran government officials to win numerous contracts worth millions of dollars. ZAGLIN also took steps to conceal his conduct and ensure the corrupt scheme's success, including by hiring a South Florida money launderer to deliver the bribe payments, and by silencing his Chief Financial Officer after he raised too many questions. ZAGLIN's criminal conduct, which lasted for years, had one chief purpose: to enrich himself. In light of the seriousness of the offense and the need to both promote the rule of law and deter future corruption, the Court should impose a substantial sentence, one no less than 180 months.

    I.     BACKGROUND

          a.  **Underlying Criminal Conduct**

The following facts were established at trial.

### i. First Uniforms Contract

Between 2015 and 2019, the defendant was the majority owner and Chief Executive Officer of Atlanco, a tactical goods manufacturer. (¶¶ 12-13.) Beginning in 2015, the defendant agreed to pay, and in fact paid, bribes to Honduran government officials to secure and receive payment under numerous lucrative contracts with the Honduran government, specifically the Comite Tecnico del Fideicomiso para la Administratcion del Fondo de Proteccion y Seguridad Poblacional ("TASA"). TASA was responsible for procuring uniforms and other goods for the Honduran National Police. (¶ 7.)

In June 2015, Atlanco entered into its first government contract with Honduras (the "First Uniforms Contract"). Atlanco agreed to provide the Honduran National Police with uniforms in return for approximately $4.8 million. It was, at the time, one of Atlanco's largest contracts. (09.11.2025 AM Tr. p. 70.)

Beginning in approximately August 2015, the defendant recruited Aldo Nestor Marchena, a South Florida money launderer, to launder and deliver the bribe payments. (¶ 22.) ZAGLIN met with Marchena in Miami, Florida, in September 2015, and subsequently entered into a sham "Brokerage Agreement" with him. (¶¶ 22-23.) The agreement was edited and signed by ZAGLIN. (¶ 23.) The agreement falsely claimed that Marchena would "aggressively work to complete the sale and delivery" of Atlanco's products throughout Latin America. (*Id*.) In truth, as Marchena testified, he "was just receiving the money to make payments." (09.04.2025 Tr. p. 94.)

When Scott Haygood, Atlanco's CFO, began raising concerns about Marchena's role in the contract, ZAGLIN personally helped sideline Haygood. ZAGLIN even involved his attorney in his efforts to try and quiet Haygood, writing to the attorney that, "I would hope I can handle Scott myself.. [*sic*] If I cannot then we have an issue." (USA's Objections to PSR (ECF No. 290);

2

GX 335.)[1]  Ultimately, ZAGLIN put up a "barrier" between the CFO and Marchena, and ZAGLIN handled Marchena himself. *Id*. ZAGLIN personally emailed and spoke with Marchena and instructed him on when to submit misleading invoices and for how much. (¶ 28.)

Between January 2016 and March 2016, Atlanco received approximately $4,960,703.66 from the Honduran government in connection with the First Uniforms Contract. (¶ 27.) ZAGLIN directed 25.4%, approximately $1,260,018.70, to Marchena, from which ZAGLIN directed Marchena to pay bribes. (¶ 31.)

### ii. Second Uniforms Contract

In October 2016, Atlanco entered into a second uniforms contract with TASA (the "Second Uniforms Contract"). (¶ 32.) This contract was for over $5 million and was secured through agreements to pay bribes. (¶ 18.) In February 2017, when Atlanco began preparing to pay bribes, ZAGLIN entered into a second sham "Brokerage Agreement" with Marchena. Marchena's fee, which included the bribe payments, was reduced from 25.4% to 21%. (¶ 34.) ZAGLIN backdated the agreement to October 26, 2016, the date on which the Second Uniforms Contract was executed, to make it appear as if Marchena assisted in securing the contract. (*Id*.)

Under the Second Uniforms Contract, between November 2016 and August 2017, the Honduran government paid Atlanco approximately $5,695,774.74. (¶ 33.) ZAGLIN, in turn, directed 21%, or approximately $1,196,112.69, to Marchena to pay bribes. (¶ 35.)

Bank records and other evidence show that Marchena paid at least two government officials on ZAGLIN'S behalf: Francisco Roberto Cosenza Centeno and Juan Ramon Molina Rodriguez, the Executive Director and Titular Director, respectively, of TASA. Marchena also sent hundreds

---

[1] ZAGLIN even lied to his own attorneys, writing that when he first met Marchena he, ZAGLIN, "worked at their [Achieve's] office in Miami for three hours[.]" (GX 317.) In truth, ZAGLIN met with Marchena for "20, 30 minutes" in a shared office. (09.08.25 PM Tr p. 73.)

3

of thousands of dollars to Jaime Nativi, a Honduran broker, to be used as additional bribe payments. The bribe payments were delivered into bank accounts all over the world, including Belize bank accounts the officials controlled and a U.S. account in the name of a shell company that Marchena opened for Cosenza's benefit.

### iii. Additional 2019 Contracts

In 2019, Atlanco received payment on two additional contracts with the Honduran government. ZAGLIN paid bribes on these contracts as well. On or about June 13, 2019, ZAGLIN texted Vice President of International Sales Luis Berkman, "What is the %." (GX 401.) Berkman replied, "21%." (*Id*.) Days later, on or about June 18, 2019, ZAGLIN wire transferred $39,406.70 from an Atlanco bank account to an account in the name of International Defense Group, a company controlled by Luis Berkman. (GX 616.) The transfer proceeds equaled 21% of the contract proceeds. Berkman later paid Cosenza one or more cash bribes. (USA's Objections to PSR (ECF No. 290).)

### iv. 2019 Unsuccessful Bid

In 2019, ZAGLIN and his conspirators bid on yet another Honduran government contract valued at approximately $7.5 million. In the lead up to their bid, in October 2019, ZAGLIN spoke with his business partner, Bryan DeHart, and Luis Berkman. During the conversation, which was captured in an audio recording, the conspirators discussed paying 20% of the contract's proceeds to government officials in a "waterfall." (GX 40.) Specifically, ZAGLIN, DeHart, and Berkman planned to use Cosenza's son, who was an attorney in Honduras, to launder the bribes. As Luis Berkman told ZAGLIN and DeHart, "Very simple, very clear, paper – paperwork wise." (GX 40-TR.) ZAGLN and Berkman had a second, follow-up conversation in which Berkman told ZAGLIN that he just confirmed with Cosenza that the bribe proceeds would be 20% of the

contract. Berkman reported to ZAGLIN that he (Berkman) said to Cosenza, "you can assure [Minister Pacheco] and everybody that we're on the same page with the waterfall and everything." (¶ 45.) ZAGLIN replied, "Yep, yep." (*Id.*)

Ultimately, Atlanco's bid was unsuccessful because Honduras did not have funding for the contract. (¶ 46.)

### b. Criminal Prosecution

On November 28, 2023, a grand jury indicted ZAGLIN. (*See* ECF No. 3.) Count 1 charged ZAGLIN with conspiracy to violate the FCPA. Count 2 charged him with substantively violating the FCPA based on his causing the submission of a November 2019 email sent to the Southern District of Florida containing Atlanco's corrupt bid for the 2019 contract. Count Three of the Indictment charged Zaglin with conspiring with Marchena, Cosenza, and others to engage in domestic concealment money laundering and international promotional money laundering, coinciding with the same time period as the FCPA conspiracy. The specified unlawful activities alleged in Count Three included (i) violations of the FCPA and (ii) violations of Honduran law.

Trial began September 2, 2025. (ECF No. 201.) The Court instructed the Jury on September 12, 2025. (ECF No. 228.) The jury began deliberations on September 12 and returned a verdict—guilty on all counts—the next business day, September 15, 2025. (ECF Nos. 228 & 229.)

## II. THE GUIDELINES

The Defendant's Total Offense Level is 40. As addressed in the government's Objections to the PSR, the Defendant is deserving of an aggravating role under § 3B1.1 and therefore is not entitled to a two-point reduction under § 4C1.1. The correct application of the Guidelines is as follows:

5

Base Offense Level

| | |
|---|---|
| Base Offense Level for Government Official (§2C1.1(a)(2)): | 12 |
| Benefit (§§2C1.1(b)(2), 2B1.1(B)(1)(I)): | +16 |
| More Than One Bribe (§2C1.1(b)(1)): | +2 |
| Public Official in High-Level Decision-Making or Sensitive Position (§2C1.1(b)(3)): | +4 |

Specific Offense Characteristics

| | |
|---|---|
| Conviction Under 18 U.S.C. § 1956 (§2S1.1(b)(2)(B)) | +2 |

Adjustment for Role in the Office

| | |
|---|---|
| Organizer or Leader of a Criminal Activity (§3B1.1(a)) | +4 |
| Adjusted Offense Level (Subtotal) | 40 |
| Acceptance of Responsibility (§§3E1.1(a), (b)) | N/A |
| Zero-Point Offender (§4C1.1) | N/A |
| Total Offense Level | 40 |

With a Criminal History Category of I, ZAGLIN's Guidelines range is 292-365 months.

### III.     THE SECTION 3553(A) FACTORS

While the Guidelines are purely advisory, the Court "must consult those Guidelines" and the factors set forth in 18 U.S.C. § 3553(a) when determining the appropriate sentence. *United States v. Booker*, 543 U.S. 220, 264 (2005).

The sentencing factors set forth in 18 U.S.C. § 3553(a)—particularly the nature and circumstances of the offense and history of the defendant, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment and adequate deterrence—counsel in favor of a substantial sentence.

ZAGLIN perpetrated and oversaw a global corruption scheme for his and his company's financial gain. He operated a business in Atlanta, Georgia, with a factory in Honduras; he used a South Florida money launderer to deliver bribe payments all over the world, including offshore bank accounts in Belize; and he undermined the rule of law in the United States and Honduras. He lied repeatedly to conceal the scheme, for example by editing and entering into two sham "Brokerage Agreements" with Marchena. He sidelined his Chief Financial Officer when he began raising questions. He lied to his lawyers. And he had Marchena submit false invoices to paper-over the bribes. He did whatever it took to make sure he and Atlanco got paid.

The Eleventh Circuit has held that white-collar criminals deserve punishments commensurate with the seriousness of their offenses:

> Because economic and fraud-based crimes are "more rational, cool, and calculated than sudden crimes of passion or opportunity," these crimes are "prime candidate[s] for general deterrence." … Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment.
> ***
> Indeed, the Congress that adopted the § 3553 sentencing factors emphasized the critical deterrent value of imprisoning serious white collar criminals, even where those criminals might themselves be unlikely to commit another offense. . . .

*United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (certain internal citations omitted). The Eleventh Circuit also cautioned against sentences that leave the impression that "would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty." *Id.*

Other courts have followed *Martin* in the FCPA context by recognizing the "value of imprisoning serious white-collar criminals" and imposing substantial sentences. In 2011, Joel Esquenazi, the former president of a telecommunications company that paid more than $890,000

7

to shell companies to be used for bribes for Haitian government officials, was sentenced to 15 years' imprisonment. *United States v. Esquenazi et al.*, 09-21010-CR-MARTINEZ-1 (S.D. Fla.). In 2023, former Bolivian Minister of Government Arturo Carlos Murillo Prijic pled guilty and was sentenced to 70 months' incarceration for his involvement in a bribery and money laundering scheme involving a $5.6 million government contract for tear gas. *United States v. Murillo Prijic*, 21-60340-CR-PCH (S.D. Fla.). Murillo Prijic received approximately $532,000 in bribe proceeds. *Id.* In 2023, defendants Claudia Patricia Diaz Guillen, the former Treasurer of Venezuela, and her husband, Adrian Jose Velasquez Figueroa, were both sentenced to 15 years in prison for their involvement in a widespread, Venezuelan bribery and laundering scheme. *United States v. Diaz Guillen et al.*, 18-80160-CR-DIMITROULEAS (S.D. Fla.). Lastly, in 2024, Carlos Ramon Polit Faggioni, the former Comptroller General of Ecuador, was sentenced to 10 years in prison for receiving over $10 million in bribes from Odebrecht S.A. *United States v. Polit Faggioni*, 22-20114-CR-KWM (S.D. Fla.).

Last month, your honor sentenced Marchena to 84 months' imprisonment. (ECF No. 281.) Marchena, a repeat offender who absconded from the United States, pled guilty and cooperated with law enforcement, including by testifying against ZAGLIN. He received a 40% reduction based on his cooperation. ZAGLIN is substantially more culpable than Marchena. ZAGLIN put this scheme into motion before Marchena was even involved. ZAGLIN used Marchena and instructed him on when to invoice and for how much. Worse, ZAGLIN bribed officials independent of Marchena, including by sending money to Luis Berkman through International Defense Group on the completed 2019 contracts and by agreeing to bribe officials on the unsuccessful $7.5 million bid in 2019, in which ZAGLIN agreed to launder payments through

Cosenza's lawyer son. ZAGLIN's greater relative culpability, combined with his lack of cooperation with law enforcement, demand a substantially higher sentence.

## IV. CONCLUSION

For the foregoing reasons, the Court should sentence ZAGLIN to a term of imprisonment of at least 180 months.

| | |
|---|---|
| LORINDA I. LARYEA<br>ACTING CHIEF, FRAUD SECTION<br>CRIMINAL DIVISION<br>U.S. DEPARTMENT OF JUSTICE | JASON A. REDING QUINOÑES<br>UNITED STATES ATTORNEY<br>SOUTHERN DISTRICT OF FLORIDA |
| BY: */s/ Peter L. Cooch*<br>Peter L. Cooch<br>Clayton Solomon<br>Trial Attorneys<br>1400 New York Avenue, NW<br>Washington, DC 20005<br>(202) 924-6259<br>Email: Peter.Cooch@usdoj.gov<br>Email: Clayton.Solomon@usdoj.gov | BY: */s/ Eli S. Rubin*<br>Eli S. Rubin<br>Assistant United States Attorney<br>Court ID No. A5503535<br>99 N.E. 4th Street<br>Miami, Florida 33132<br>(305) 961-9247<br>Email: Eli.Rubin@usdoj.gov |

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 12, 2025, the undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Eli S. Rubin*
Eli S. Rubin
Assistant United States Attorney